UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JESSECA DUPART, ET AL.                                    CIVIL ACTION

VERSUS                                                              NO. 20-1406

RODNEY ROUSSELL, ET AL.                          SECTION "R" (5)


**ORDER AND REASONS**


The Court ordered plaintiffs to show cause for why their Lanham Act claim should not be dismissed for failure to state a claim.[1]  Plaintiffs and *pro se* defendant, Rodney Roussell, filed memoranda in response.[2]   For the following reasons, the Court finds that plaintiffs Dupart and Harris fail to state a claim for trademark infringement under the Lanham Act.  The Court also finds that plaintiff Dupart states a claim for false advertising and false designation of geographic origin under the Act, but plaintiff Harris does not.


I.     **BACKGROUND**

Plaintiffs allege that defendant Roussell produces YouTube videos and Instagram posts that discuss plaintiffs' personal lives and Dupart's cosmetics

---

[1]      R. Doc. 26.
[2]      R. Doc. 29;  R. Doc. 32.

brand—"Kaleidoscope."[3]  The complaint alleges that, in his videos and social-media posts, Roussell goes by the moniker "M.C. Shakie."[4]  According to the complaint, Roussell's YouTube videos are part of an ongoing series called "Address the Mess with M.C. Shakie."[5]  Plaintiffs allege that Roussell has over 40,700 subscribers on YouTube and over 81,500 followers on Instagram.[6]  The complaint also alleges that Roussell has received 716,089 views for the YouTube videos in which he mentions plaintiffs.[7]  In addition, plaintiffs allege that Roussell owns and operates his own cosmetics business called "Sip Cosmetics."[8]

The complaint alleges that Dupart and Harris each hold trademarks.[9]  For example, Dupart alleges that she holds a registered design mark for the Kaleidoscope logo,[10] as well as a number of word marks associated with the Kaleidoscope brand, including "Kaleidoscope Miracle Drops" and "Kaleidoscope Miracle Edges."[11]  In addition, the complaint alleges that plaintiff Shawntae Harris has a registered trademark in "Da Brat," which she

---

[3]     *See* R. Doc. 1 at 20 ¶ 24.
[4]     *See id.* at 3 ¶ 10.
[5]     *See, e.g.*, *id.* at 6 ¶ 19.
[6]     *See id.* at 3 ¶ 10.
[7]     *See id.* at 20 ¶ 23.
[8]     *See id.* at 4 ¶ 12.
[9]     *See id.* at 2 ¶ 2.
[10]    *See id.*
[11]    *See id.* at 2 ¶¶ 2-5.

has used since 1993.[12]  Harris also alleges she has a common-law trademark in her social-media handle, "@sosobrat."[13]  Importantly, the complaint does not allege that Harris has any ownership of or interest in Kaleidoscope or its associated trademarks.[14]

Plaintiffs allege that on February 10, 2020, Roussell uploaded a video to YouTube in which he claims that plaintiffs are in a same-sex relationship.[15]  Plaintiffs allege that on February 13, 2020, Roussell uploaded another video in which he repeats that assertion, and adds negative comments about Dupart's Kaleidoscope products.[16]  Specifically, plaintiffs allege that Roussell claims Kaleidoscope products are made with "canola oil" and are "laced with cayenne pepper."[17]  In another video, plaintiffs allege that Roussell falsely

---

[12]     *See id.* at 3 ¶ 8; R. Doc. 4.

[13]     *See id.*

[14]     The Court notes that according to the facts in the complaint, the false-advertising and false-designation-of-geographic-origin claims apply only to Dupart and her Kaleidoscope products.  This Order does not address the merits of either Dupart or Harris's remaining state-law claims.

[15]     *See* R. Doc. 1 at at 6, ¶ 19; YouTube, *MC Shakie Addresses The Mess Judy & Brat, Supa, Fee and More*, https://www.youtube.com/watch?v=5Txa5DSr9_E (last visited October 1, 2020).

[16]     *See* R. Doc. 1 at 6 ¶ 19; YouTube, *MC Shakie's Reaction to Da Real BB Judy Video & Exclusive Video from Judy's Ex Girlfriend*, https://www.youtube.com/watch?v=wzQX65Av86A&t=2083s (last visited October 1, 2020).

[17]     *See* R. Doc. 1 at 6 ¶ 19; YouTube, *MC Shakie's Reaction to Da Real BB Judy Video & Exclusive Video from Judy's Ex Girlfriend*,

asserts that Dupart's Kaleidoscope products are "Chinese concoctions"[18] which Dupart orders "directly from China."[19]  According to the complaint, Roussell also asserts that Dupart's products "brought Corona over [to the United States]."[20]

Plaintiffs sued Roussell in federal court, seeking relief under the Lanham Act.  In their complaint, plaintiffs assert claims for trademark infringement, unfair competition, and false designation of origin.[21]  Plaintiffs also bring numerous state-law claims, including defamation and violation of the Louisiana Unfair Trade Practices Act (LUTPA), La. Rev. Stat. § 51:1401, *et seq*.  After they filed the complaint, plaintiffs moved for a temporary restraining order in which plaintiffs argue their Lanham Act claim solely on a theory of trademark infringement.[22]  The Court denied the motion.[23]

---

https://www.youtube.com/watch?v=wzQX65Av86A&t=2083s  (last visited October 1, 2020).

[18]     R. Doc. 1 at 7 ¶ 19; YouTube, *The Miracle FLOP! How DaRealBBJudy Keep on Lying*, https://www.youtube.com/watch?v=oazNVVSlGZo (last visited October 1, 2020).

[19]     R. Doc. 1 at 7 ¶ 19; YouTube, *The Miracle FLOP! How DaRealBBJudy Keep on Lying*, https://www.youtube.com/watch?v=oazNVVSlGZo (last visited October 1, 2020).

[20]     R. Doc. 1 at 7 ¶ 19; YouTube, *The Miracle FLOP! How DaRealBBJudy Keep on Lying*, https://www.youtube.com/watch?v=oazNVVSlGZo (last visited October 1, 2020).

[21]     *See* R. Doc. 1 at 27.

[22]     *See* R. Doc. 8-1 at 13-19.

[23]     *See* R. Doc. 9.

Plaintiffs then filed a revised motion for a preliminary injunction, in which plaintiffs again rely exclusively on a theory of trademark infringement for their Lanham Act claim.[24]

The Court ordered plaintiffs to show cause as to why the Lanham Act claim should not be dismissed for failure to state a claim.[25]  Plaintiffs filed a memorandum in response in which they argue that Roussell is liable for false advertising[26] and dilution-by-tarnishment under the Lanham Act.[27]  Neither the phrase "false advertising" nor "dilution by tarnishment" appeared in this proceeding before the Court ordered plaintiffs to show cause.  Although the complaint cites the relevant portion of the Lanham Act for a false-advertising claim,[28] 15 U.S.C. § 1125(a), the complaint does not even mention 15 U.S.C. § 1125(c), the proper provision for a dilution-by-tarnishment claim. Accordingly, the Court will not consider whether plaintiffs have stated a claim for dilution-by-tarnishment, as plaintiffs have not pleaded the claim in their complaint.  *See* Fed. R. Civ. P. 8; *see also Land v. Dollar*, 330 U.S. 731,

---

[24]   *See* R. Doc. 18 at 11-17.

[25]   *See id*. at 2.

[26]   R. Doc. 29 at 5-6.

[27]   *Id*. at 6.

[28]   Plaintiffs style their Lanham Act claim as an unfair competition claim. *See* R. Doc. 1 at 27.  "[U]nfair competition under the Lanham Act is a category of claims consisting primarily of causes of action for false designation of origin and false advertising."  *Susman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 272 (E.D.N.Y. 2014).

735 n.4 (1947) (writing that when "the complaint fails to state a cause of action, the facts set forth in the complaint . . . may not be considered"); *Phase II Transportation, Inc. v. Carolina Cas. Ins.*, 288 F. Supp. 3d 999, 1008 (C.D. Cal. 2017) ("It is elementary that a party cannot recover on a cause of action not in the complaint.").

Roussell, who remains *pro se*, filed a nine-page memorandum in response to the Court's show cause order.[29]  Because the memorandum is in substance a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court will consider his arguments in this Order.

## II.   LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff.  *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  The Court must resolve doubts as to the sufficiency of the claim in the plaintiff's favor.  *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001).

But to survive a Rule 12(b)(6) motion, a party must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

---

[29]    *See* R. Doc. 32.

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Courts must dismiss the claim if there are insufficient factual allegations to raise the right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007).  The Court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 679.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments thereto.  *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims.  *Id.*  Courts have held that videos are incorporated by reference when they are attached to the complaint.  *See, e.g*, *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("[Plaintiff] incorporated the video recording into her original complaint both by reference and by physically attaching the video recording to the amended complaint.").

Finally, courts construe briefs submitted by *pro se* litigants liberally, and a court will "apply less stringent standards to parties proceeding pro se

than to parties represented by counsel." *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (per curiam); *see also Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*, 706 F.2d 638, 640 n.1 (5th Cir. 1983).  This does not mean, however, that a court "will invent, out of whole cloth, novel arguments on behalf of a pro se plaintiff in the absence of meaningful, albeit imperfect, briefing." *Jones v. Alfred*, 353 F. App'x 949, 951-52 (5th Cir. 2009).  When construing *pro se* pleadings, it is their substance rather than title, that controls.  *See Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) ("It is the substance of the relief sought by a *pro se* pleading . . . that determines the true nature and operative effect . . . .").

## III.   DISCUSSION

### A.   Trademark Infringement

Plaintiffs fail to state a claim for trademark infringement under the Lanham Act.  The relevant provision, 15 U.S.C. § 1125(a)(1)(A), forbids "false or misleading representation[s] of fact" that "are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods . . . ."  15 U.S.C. § 1125(a)(1)(A). To prevail on a trademark-infringement claim, a plaintiff must show (1) a protectable right in a mark, and (2) that the defendant's use of the marks

creates a likelihood of confusion as to the mark's source, affiliation, or sponsorship. *See Paulsson Geophysical Services, Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008).

As to the first factor, plaintiffs have sufficiently alleged protectable rights in marks. "Registration of a mark with the PTO constitutes *prima facie* evidence of the mark's validity and the registrant's exclusive right to use the registered mark." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010). The complaint states that plaintiff Dupart holds a registered design mark for her Kaleidoscope logo,[30] as well as several word marks associated with the Kaleidoscope brand.[31] The complaint also alleges that plaintiff Harris's holds a registered mark in "Da Brat."[32] Thus, plaintiffs are entitled to the presumption of ownership for these registered marks. *See Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F. Supp. 2d 890, 899 (C.D. Cal. 2014).

But as to the second factor, the complaint does not allege any facts to show that Roussell's use of the marks creates a "likelihood of confusion." Here, the "paramount question is whether one mark is likely to cause confusion with another." *Xtreme Lashes, LLC, v. Xtended Beauty, Inc.*, 576

---

[30]   R. Doc. 1 at 2 ¶ 2.

[31]   *See id.* at 2 ¶¶ 2-5.

[32]   *See id.* at 3 ¶ 8; R. Doc. 4.

F.3d 221, 226 (5th Cir. 2009).  To determine whether confusion exists, courts often consult nine non-exhaustive "digits of confusion."  Those digits are:  (1) the type of trademark; (2) mark similarity; (3) similarity of services; (4) identity of retail outlets and purchasers; (5) identity of advertising media; (6) defendant's intent; (7) actual confusion; (8) care exercised by potential purchasers, and (9) parody.  *Id.* at 227; *see also Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1988) (adding "parody" as a digit of confusion).  No digit is dispositive.  *Capece*, 141 F.3d at 194.  Nor must the Court make a positive finding on a majority of the factors to find a likelihood of confusion.  *Id.*  The digits of confusion "do not apply mechanically to every case and can serve only as guides."  *Scott Fetzer Co. v. house of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004).

Plaintiffs do not allege any facts that could show a likelihood of confusion.  To the contrary, plaintiffs' factual allegations suggest just the opposite—defendant uses plaintiffs' marks in a manner that *differentiates* his products from plaintiffs' marks, mostly by making negative comments about Kaleidoscope or Dupart and Harris personally.  The complaint refers to one statement, for example, in which Roussell states "none of *my* stuff is coming from China bringing corona over here like somebody else's products

. . . . I ain't gonna say no names . . . . Kaleidoscope."[33]  In another statement, Roussell asserts that *he* sells cosmetics, whereas Dupart's Kaleidoscope products are made of "canola oil, cayenne pepper, milkshake" and "soy milk."[34]  And with respect to Harris, the complaint alleges that Roussell uses Harris's "Da Brat" mark only when claiming that Harris and Dupart are in a same-sex relationship,[35] or when Roussell otherwise makes alleged negative statements pertaining to Harris.[36]  None of these allegations suggests a likelihood of confusion between any of the marks at issue.

The "digits of confusion" likewise show no likelihood of confusion.  For example, nothing in the complaint suggests that Roussell's "intent" was to "cause confusion" between his products and plaintiffs' marks.  *Xtreme Lashes*, 576 F.3d at 229.  Nor have plaintiffs alleged facts showing "actual confusion"—that consumers have confused Roussell's products for plaintiffs'

---

[33]    *See* R. Doc. 1 at 7 ¶ 19; YouTube, *Kaleido Concentration Camp? Shakie Takes Us Inside DaRealBBJudy*, https://www.youtube.com/watch?v=wa_9hEZg-30 (last visited October 1, 2020).

[34]    *See* R. Doc. 1 at 19 ¶ 19; YouTube, *Shakie in Rare Form Goes in on DARealBBJudy and Her Lawyer (Must See)*, https://www.youtube.com/watch?v=pv28eZl_O6M (last visited October 1, 2020).

[35]    *See* R. Doc. 1 at 6, ¶ 19.

[36]    *See* R. Doc. 1 at 15, ¶ 19; YouTube, *MC Shakie Responds to DaRealBBJudy and Da Brat Revelation*, https://www.youtube.com/watch?v=msePa8zUlBY (last visited October 1, 2020).

marks. *Id.* In all events, plaintiffs' factual allegations cannot support a finding that "one mark is likely to cause confusion with another." *Id.* at 226. Because plaintiffs fail to plausibly allege a likelihood of confusion between any of the marks at issue, plaintiffs fail to state a trademark-infringement claim under the Lanham Act.

## B. False Advertising and False Designation of Geographic Origin

At the outset, the Court notes that although plaintiffs plead their Lanham Act claims together,[37] none of the factual allegations in the complaint could support Harris's claim for false advertising or false-designation-of-geographic origin. The false-advertising provision in the Lanham Act forbids "false or misleading representation[s] of fact" that "misrepresent[] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . ." 15 U.S.C. § 1125(a)(1)(B) (emphasis added).

The complaint does not allege that Harris offers any "goods" or "services" at all, nor does it allege that Harris is engaged in "commercial activit[y]," apart from Harris's alleged ownership of the "Da Brat" and "@sosobrat" trademarks as discussed above. The only allegations having

---

[37]   *See* R. Doc. 1 at 27- 31 ¶¶ 59-77.

anything to do with "goods," "services," or "commercial activit[y]," are those pertaining to Dupart's Kaleidoscope products—a business that Harris does not claim any involvement, interest, or ownership in whatsoever. Accordingly, the Court finds that plaintiff Harris fails to state a claim for false advertising and false designation of geographic origin under the Lanham Act, because she fails to plead any factual allegations relevant to a false-advertisement or false-designation-of-geographic-origin claim. *Iqbal*, 556 U.S. at 678. The Court proceeds to consider whether plaintiff Dupart separately states a claim for false advertising or false designation of geographic origin.

      1.   *Dupart's "Statutory Standing" in light of* Lexmark

In its 2014 decision, *Lexmark Intern., Inc. v. Static Control Components, Inc.*, the U.S. Supreme Court resolved a disagreement among the circuit courts as to "which class of plaintiffs . . . ha[ve] a cause of action" to sue for false advertising under the Lanham Act. *See* 572 U.S. 118, 128.[38]

---

[38]    Much of *Lexmark* is dedicated to identifying the proper terminology for the question it was deciding. The Supreme Court granted certiorari on the following issue: "the appropriate analytical framework for determining a party's *standing*" to maintain a false-advertising claim. *Id.* at 125. The Supreme Court rejected the idea that it was ruling on a question of "prudential standing" or "Article III standing," but it found the term "statutory standing" an imperfect, yet acceptable descriptor for the question it was deciding. *Id.* at 128, n.4.

*Lexmark* held that to state a claim under the Lanham Act, a plaintiff must plead injuries that (1) fall within the Act's "zone of interests," and those injuries must be (2) "proximately caused" by the defendant.  *Id.* at 129-33. Plaintiffs who plausibly allege these elements, the Supreme Court held, are among the "class of plaintiffs whom Congress has authorized to sue under § 1125(a)."  *Id.* at 128.    Accordingly, the Court asks whether Dupart has adequately alleged these requirements.  *See id.* at 134 n.6 (writing that the "element[s] of a cause of action . . . must be adequately alleged at the pleading stage in order for the case to proceed").

First, Dupart satisfies *Lexmark*'s zone-of-interest requirement.  "[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales."  *Id.* at 131-32.  A complaint satisfies this requirement by alleging commercial injuries, such as "lost sales" or "damage to [a plaintiff's] business reputation."  *Id.* at 137.  In *Lexmark*, the counter-claimant, Static Control, alleged that the counter-defendant, Lexmark, "divert[ed] sales from [Static Control] to Lexmark" by "leading consumers and others in the trade to believe that [Static Control] is engaged in illegal conduct."  *Id.* at 123.  The Supreme Court found that because Static Control alleged an injury to its business reputation as well as an injury to its sales, Static Control's injury

14

was "commercial," and thus fell within the zone of interest of the Lanham Act. *Id*. at 132, 137.

Here, Dupart alleges injuries to her Kaleidoscope business that are similar to Static Control's injuries in *Lexmark*. For example, Dupart alleges "reduced market share, loss of income, difficulty in establishing advertiser relationships"[39] as well as "loss of income from sales."[40] Dupart also alleges damage to her "business reputation."[41] Accordingly, the Court finds that Dupart has adequately alleged commercial injuries that fall within the zone of interest of the Lanham Act.

Second, Dupart adequately alleges that her injuries are "proximately caused" by Roussell. To satisfy the proximate cause element, a plaintiff must demonstrate that their injuries "flow[] directly from the deception wrought by the defendant's advertising." *Id*. at 133. This can occur, the Supreme Court reasoned, when the "deception of consumers causes them to withhold trade from the plaintiff." *Id*. The *Lexmark* court noted that although the "diversion of sales to a direct competitor may be the paradigmatic" example of proximate causation in the context of a Lanham Act claim, "it is not the only type of injury cognizable under § 1125(a)." *Id*.

---

[39]    *See id*. at 25 ¶ 45.
[40]    *See id*. at 31 ¶ 83.
[41]    *See id*.

15

In the context of product disparagement cases,[42] *Lexmark* noted that "competition is not required for proximate cause." *See id.* at 138. "When a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements." *Id.* at 138. Put another way, when "a defendant . . . 'seeks to promote his own interests by telling a known falsehood to *or about* the plaintiff or his product' may be said to have proximately caused the plaintiff's harm." *Id.* (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657 (2008).

Here, the complaint is replete with allegations suggesting that Roussell made disparaging statements about Dupart and her Kaleidoscope business,[43] and that he did so to further his own commercial purpose. As explained above, Dupart alleges that Roussell falsely contends that her products are made with "canola oil" and "cayenne pepper."[44] She also alleges that

---

[42] The Court notes that alleged false statements or misrepresentations about *another*'s products are sometimes styled as "product disparagement" claims. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:71 (5th ed. 2020). To remain consistent with the pleadings and controlling case law, the Court uses the locution "false advertising."

[43] *See id.* at 6-19, ¶ 19.

[44] *See* R. Doc. 1 at 6 ¶ 19; YouTube, *MC Shakie's Reaction to Da Real BB Judy Video & Exclusive Video from Judy's Ex Girlfriend*, https://www.youtube.com/watch?v=wzQX65Av86A&t=2083s (last visited October 1, 2020).

Roussell falsely asserts that Kaleidoscope products brought the coronavirus to the United States and that they are made in China.[45]  The complaint alleges that Roussell made these statements as part of an effort to market his own Sip Cosmetics brand to Dupart's audience.[46]  Indeed, Dupart alleges that Roussell made the following statement, in which he admits to making negative comments about Kaleidoscope in order to sell his own cosmetic products: "So [Dupart is] basically saying that I used her to sell products . . . my response to that is, she's one-hundred percent right.  Let's just get that off the table.  I used her to sell products.  I used her to sell products."[47]  Given these factual allegations and the Supreme Court's holding in *Lexmark*, the Court finds that Dupart plausibly alleges that Roussell proximately caused her injuries.

### 2. *Commercial Advertising or Promotion*

Having established that Dupart is among "the class of plaintiffs whom Congress authorized to sue under § 1125(a)," *id.* at 197, the Court proceeds to

---

[45]    R. Doc. 1 at 7 ¶ 19; YouTube*, The Miracle FLOP! How DaRealBBJudy Keep on Lying*, https://www.youtube.com/watch?v=0azNVVSlGZ0 (last visited October 1, 2020).

[46]    *See* R. Doc. 1 at 4 ¶ 12.

[47]    R. Doc. 1 at 16 ¶ 19, YouTube*, M.C. Shakie Addresses DaRealBBJudy Calling Him an Opportunist*, (last visited October 1, 2020). https://www.youtube.com/watch?v=0TtYYYv68yo (last visited October 1, 2020).

the elements of a claim for false advertising and false designation of geographic origin.  To state a claim for false advertising or false designation of geographic origin, a plaintiff must allege that the defendant's false statements were made in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B)  (emphasis added).  As explained below, Dupart satisfies this requirement.

Before *Lexmark*, the Fifth Circuit adopted a four-factor test to determine whether speech is "commercial advertising or promotion."  It held that statements constitute "commercial advertising or promotion" when the statements are (1) commercial speech, (2) made by a defendant who is in commercial competition with the plaintiff, (3) for the purpose of influencing consumers to buy defendant's goods or services, and (4) disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.  *See Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383 (5th Cir. 1996) (citing *Gordon & Breach v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994)).

### i.     Lexmark'*s Implications*

Two circuit courts have rejected the second part of the above *Seven-Up/Gordon & Breach* test—which requires "commercial competition"—following the Supreme Court's decision in *Lexmark*.  *See Handsome Brook*

*Farm, LLC v. Humane Farm Animal Care Inc.*, 193 F. Supp. 3d 556, 570 (E.D. Va. 2016) ("[I]t would be a perplexing decision by the Supreme Court to conclude that indirect competitors had standing to bring a Lanham Act claim, but those same plaintiffs' claims would necessarily fail on the merits due to lack of direct competition."), *aff'd* 700 F. App'x 251, 256 (4th Cir. 2017) ("[W]e do not adopt the second factor requiring a competitive relationship."); *Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 801 (6th Cir. 2015) ("[B]ecause the statute nowhere requires such a showing by plaintiffs, we will not impose [the commercial competition requirement]."). And the Eleventh Circuit affirmed a district court opinion that stated that "[a]fter the Supreme Court's decision in *Lexmark* . . . it does not appear that the second prong of the *Gordon & Breach* test, which requires that the defendant be in commercial competition with the plaintiff, remains good law." *Tobinick v. Novella*, 2015 WL 1191267, at *5 n.10 (S.D. Fla. 2015), *aff'd*, 848 F.3d 935, 950 (11th Cir. 2017). The only circuit to take the contrary view is the Tenth Circuit. *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1268 (10th Cir. 2020) (holding that the "commercial competition" requirement remains after *Lexmark*).

Because this question is material to the test the Court must apply here, and because the Fifth Circuit has not yet spoken to the issue, the Court

considers whether *Lexmark* eliminated the second factor of the *Seven-Up/Gordon & Breach* test.

Like the majority of courts to consider this question after *Lexmark*, the Court finds that *Lexmark* eliminated the "commercial competition" requirement in the "commercial advertising or promotion" analysis.  First, the *Lexmark* court observed that nothing in the statute's text required a competitive relationship between plaintiffs and defendants.  *See id.* at 136 (writing that the imposition of a "direct-competitor" test would "distort the statutory language" of the Lanham Act).  Indeed, the word "competition" does not appear in 15 U.S.C. § 1125(a)(1)(B).  Although the United States District Court for the Southern District of New York first put forward the "commercial competition" factor in *Gordon & Breach*, the Second Circuit did not adopt it, in part because there was no basis for the requirement in the statute's text.  *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 58 (2d Cir. 2002) ("We note that the requirement [for commercial competition] is not set forth in the text of Section 43(a) and express no view on its soundness.").  And following the Supreme Court's emphasis on the statute's text in *Lexmark*, the Sixth Circuit declined to adopt the "commercial competition" requirement on textual grounds alone.  *See Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 801 (6th Cir. 2015) ("[B]ecause the statute

20

nowhere requires such a showing by plaintiffs, we will not impose [the commercial competition requirement].").

Second, it would be inconsistent with *Lexmark*'s holding to say that a class of plaintiffs—those who are not in competition with defendants—may bring suit for false advertising, yet those same plaintiffs could never prevail on their claims. *See Handsome Brook Farm, LLC v. Humane Farm Animal Care Inc.*, 193 F. Supp. 3d 556, 570 (E.D. Va. 2016) ("[I]t would be a perplexing decision by the Supreme Court to conclude that indirect competitors had standing to bring a Lanham Act claim, but those same plaintiffs' claims would necessarily fail on the merits due to lack of direct competition."), *aff'd* 700 F. App'x 251, 256 (4th Cir. 2017).

Indeed, in deciding the case before it, the *Lexmark* court explicitly rejected the views of the "'Seventh, Ninth, and Tenth [Circuits] . . . [which] permitted Lanham Act suits only by an actual competitor.'" *See id.* at 125 (citing *Static Control Components, Inc. v. Lexmark Intern., Inc.*, 697 F.3d 387, 396 (6th Cir. 2012)). It also rejected the test that the counter-defendant, Lexmark, recommended—a "direct-competitor test" which would limit a cause of action only to those plaintiffs who were in direct competition with the defendants. *See id.* at 136. In declining to adopt the direct-competitor test, the Supreme Court observed that "[b]y the time the Lanham Act was

adopted, the common-law tort of unfair competition was understood not to be limited to actions between competitors." *Id.* at 136.

Third, the Tenth Circuit—the only circuit to hold that plaintiffs must be in commercial competition with defendants after *Lexmark*—reached its conclusion by simply pointing to the narrowness of *Lexmark*'s holding.  To be sure, the *Lexmark* court wrote that the question of what constitutes "commercial advertising or promotion . . . is not before us, and we express no view on it." *Lexmark*, 572 U.S. at 123 n.1.  But the Tenth Circuit did not discuss any of *Lexmark*'s reasoning, or whether *Lexmark*'s holding logically bore on the "commercial advertising or promotion" analysis.  *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1268 (10th Cir. 2020).  A leading treatise has weighed in on the debate, and argued that "[t]he Tenth Circuit misreads the *Lexmark* precedent. . . .  [T]he Supreme Court's conclusion [in *Lexmark* was] that the Lanham Act provides a remedy to anyone, competitor or noncompetitor, with a commercial injury due to false advertising or false disparagement"  J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:94 (5th ed. 2020).

For all of these reasons, the Court concludes that plaintiffs need not plead that they are in "commercial competition" with defendants to show that a defendant is engaged in "commercial advertising or promotion."

Accordingly, the Court proceeds by applying the remaining *Seven-up*/*Gordon & Breach* factors.  Namely, whether Roussell's conduct amounts to (1) commercial speech, (2) whether he made the alleged statements for the purpose of influencing consumers to buy defendant's goods or services, and lastly, whether (3) the alleged statements were disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.  *See Seven-Up Co.*, 86 F.3d at 1383 (5th Cir. 1996) (citing *Gordon & Breach*, 859 F. Supp. at 1535-36 (S.D.N.Y. 1994)).

> ii.    *Commercial Speech*

First, Dupart plausibly alleges that Roussell's statements constitute "commercial speech."  In *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 , 66-67 (1983), the U.S. Supreme Court recognized three factors that help determine whether speech is commercial: (1) whether the communication is an advertisement; (2) whether it refers to a specific product or service; and (3) whether the speaker has an economic motivation for the speech.  *See also Procter & Gamble Co. Amway Corp.*, 242 F.3d 539,  552  (5th Cir. 2001) (applying the *Bolger* factors in the context of a Lanham Act claim), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

23

The Fifth Circuit stated in *Procter & Gamble* that the third factor—the economic motivation of the speaker—can "collapse into" the first factor— whether the statements are advertisements. *Id.* In *Procter & Gamble*, the Fifth Circuit considered whether defendant Amway was engaged in "commercial speech" when Amway employees repeated a rumor that the Procter & Gamble was affiliated with the Church of Satan. *Id.* The Fifth Circuit noted that defendant's conduct "was not an advertisement in the classic sense," but that it could constitute commercial speech if Amway's motivation for repeating the rumor was economic. *Id.* at 553. Finding the question of economic motivation "determinative" in this context, the *Procter & Gamble* court applied the *Bolger* factors in reverse order. Based on *Procter & Gamble*, the Court will first consider whether defendant had an economic motivation for the speech at issue.

The Court finds Dupart has plausibly alleged that Roussell's speech is "economically motivated." As stated above, the complaint alleges that Roussell admits that the purpose of his negative comments was to sell his own Sip Cosmetic products.[48] And in an Instagram post attached to the

---

[48]   R. Doc. 1 at 16 ¶ 19, YouTube, *M.C. Shakie Addresses DaRealBBJudy Calling Him an Opportunist*, (last visited October 1, 2020). https://www.youtube.com/watch?v=0TtYYYv68yo (last visited October 1, 2020).

complaint, Roussell states: "All in all today was successful!  While there  is a definite method to my madness and purpose to my petty it is paying off.  Sip Cosmetics got 854 orders for $10,000 in sales since launch."[49]  With respect to the latter statement, the complaint alleges that Roussell's reference to his own "madness" and "petty" behavior is a reference to his online content pertaining to Dupart.[50]  Given these alleged statements, the Court finds that Dupart has plausibly asserted that Roussell's speech was economically motivated.

As a consequence, the Court finds that Dupart plausibly alleges that Roussell's videos constitute "advertisement[s]." *Procter & Gamble*, 242 F.3d at 552.   Moreover, courts have noted that "advertising is generally understood to consist of widespread communication through print or broadcast media."  *Fashion Boutique of Short Hills, Inc.*, 314 F.3d at 57. Here, Dupart alleges that Roussell has 81,500 followers on Instagram and 40,700 subscribers on YouTube, to whom he communicate his messages.[51] Dupart also alleges that Roussell has received over 716,089 views for the videos in which he mentions Dupart or the Kaleidoscope brand.[52]   These

---

[49]    *See* R. Doc. 1-2.
[50]    *See* R. Doc. 1 at 20 ¶ 24.
[51]    *See id*. at 3 ¶ 10.
[52]    *See id*. at 20 ¶ 23.

allegations plausibly indicate that Roussell's conduct amounts to an "advertisement." *Id.* And apart from Roussell's alleged negative comments pertaining to Dupart's Kaleidoscope products, the complaint also alleges that Roussell encourages his viewers to purchase his own Sip Cosmetic products in the same videos.[53] This likewise bolsters the conclusion that Dupart plausibly alleges that Roussell's statements are advertisements. *See Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 637 (1985) (writing that advertisements propose a commercial transaction); *see also Gordon & Breach*, 859 F. Supp. at 1537 (writing that, at its core, commercial speech is any speech that "proposes a commercial transaction").

As to the remaining factor of the *Bolger* test—whether Roussell's speech refers to a specific product or service—the complaint is replete with references to statements in which Roussell mentions his own products and services as well as Dupart's.[54] Accordingly, the Court finds that Dupart plausibly alleges that Roussell's conduct constitutes commercial speech.

---

[53]   *See, e.g., id.* at 19, ¶ 19.
[54]   *See, e.g., id.* at 6-19 ¶ 19.

### iii.  *Influencing Customers to Buy Products*

The third part of the "commercial advertising or promotion" test asks whether Roussell made the relevant statements to "for the purpose of influencing consumers to buy his goods."  *See Seven-Up Co.*, 86 F.3d at 1383. As explained above, Dupart alleges that Roussell made statements admitting that the aim of his disparaging videos is to sell Sip Cosmetic products.[55]  In addition, Dupart alleges that Roussell is able to gain notoriety—in the form of additional YouTube viewers—by allegedly making comments about her in his YouTube videos.[56]  The *Lexmark* court indicated that this was the sort of allegation to which the false-advertising provision of Lanham Act applied. *See Lexmark*,  572 U.S. at 138 (writing that "a defendant who 'seeks to promote his own interests by telling a known falsehood to or about the plaintiff or his product'" alleges an injury that falls within the scope of the Lanham Act).  Accordingly, the Court finds that Dupart has alleged sufficient facts to suggest that Roussell made the alleged statements for the purpose of influencing customers to buy his Sip Cosmetic products.

---

[55]     *See id.*; YouTube*, M.C. Shakie Addresses DaRealBBJudy Calling Him an Opportunist*, (last visited October 1, 2020).
https://www.youtube.com/watch?v=oTtYYYv68yo (last visited October 1, 2020).

[56]     *See id.* at 20-21, ¶¶ 23, 25.

iv.  *Disseminated Sufficiently*

Finally, the Court asks whether defendant's statements are "disseminated sufficiently" to the relevant purchasing public. As noted above, the complaint alleges that Roussell has 81,500 followers on Instagram and 40,700 subscribers on YouTube,[57] and that Roussell has received a total of 716,089 views in for the videos in which he mentions Dupart or the Kaleidoscope brand.[58] The Court finds that Dupart made sufficiently plausible allegations as to the dissemination element. *See, e.g.*, *Seven-Up Co.*, 86 F.3d at 1386 (finding a sales presentation made to 11 out of 74 soft drink bottlers was sufficient); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002) (disseminating a message to 27 people in a market place of thousands was insufficient to constitute "commercial advertising or promotion").

In sum, the Court finds that Dupart has plausibly alleged that Roussell's conduct amounted to "commercial advertising or promotion." *See Seven-Up Co.*, 86 F.3d at 1383. The Court proceeds to the next question— whether Dupart adequately alleges the remaining elements of false-

---

[57]     *See id.* at 3-4 ¶ 10.
[58]     *See id.* at 20 ¶ 23.

advertising and false-designation-of-geographic-origin under the Lanham Act.

>        3.   *False Advertising and False Designation of Geographic Origin*

The same provision of the Lanham Act applies to both false-advertising and false-designation-of-geographic-origin claims.   The Lanham Act proscribes "false or misleading representations of fact" made in "commercial advertising or promotion" as to the "nature, characteristics, qualities, or geographic origin of . . . another person's goods, services, or commercial activities." 18 U.S.C. § 1125(a)(1)(B).

The elements of a false-advertising claim or a false-designation-of-geographic-origin claim under the Lanham Act are:  (1) a false or misleading statement of fact about a product; (2) such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been injured or is likely to be injured as a result of the statement at issue. *Pizza Hut, Inc. v. Papa John's Intern., Inc*, 227 F.3d 489, 495 (5th Cir. 2000)   (providing the above elements in the context of a false-advertising claim); *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 249 (3d Cir. 2011) (providing the above elements in a false-

designation-of-geographic-origin claim).  As explained below, Dupart alleges sufficient facts for each of these elements.

i.   *Literally False Statements*

With respect to the first factor, there are two types of "false or misleading statement[s] about a product."  There are (1) "commercial claims that are literally false as a factual matter" and (2) "claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context."  *See United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175 (8th Cir. 1998) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  A statement is "literally false" when it is "an explicit representation of fact that on its face conflicts with reality."  *Eli Lily & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 382 (7th Cir. 2018); *see also Wysong Corporation v. APN, Inc.*, 889 F.3d 267, 271 (6th Cir. 2018) ("[O]nly an 'unambiguously' deceptive message can be literally false."); Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:54 (5th ed. 2020) ("Most courts agree that 'only an unambiguous message can be literally false.'").  "[I]f the language at issue is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false."  *Greater Houston Transportation Co. v. Uber Technologies, Inc.*, 155 F. Supp. 3d 670, 700 (S.D. Tex. 2015).

30

Although the question whether a statement is "literally false" is typically a question of fact, courts may consider whether a plaintiff plausibly alleges that a statement is literally false at the motion-to-dismiss stage. *See, e.g.*, *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 638 (S.D.N.Y. 2018); *MMM Healthcare, Inc. v. MCS Health Management Options*, 818 F. Supp. 2d 439, 449 (D.P.R. 2011).

Indeed, considering whether the complaint plausibly alleges that a statement is "literally false" is critical, because the Fifth Circuit held in *Pizza Hut, Inc. v. Papa John's Intern., Inc.,* that courts must assume that "literally false" statements are *both* (2) deceptive *and* (3) material to consumer decisions. 227 F.3d 489. That is, if Dupart plausibly alleges that Roussell's statements are literally false, the Court must assume that the complaint likewise plausibly alleges that his statements are both deceptive and material. *Pizza Hut*, 227 F.3d 489, 497 (5th Cir. 2000).[59]

---

[59]     Specifically, the Fifth Circuit wrote that "[w]ith respect to *materiality*, when the statements of fact at issue are shown to be literally false, the plaintiff need not introduce evidence on the issue of the impact the statements had on consumers." *Id.* (emphasis added).  Other circuits have taken issue with *Pizza Hut*'s logic, noting that statements could be literally false, yet utterly immaterial to consumer decisions. *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave*, 84 F.3d 302, n.10 (1st Cir. 2002) ("[E]ven when a statement is literally false or has been made with the intent to deceive, materiality must be demonstrated in order to show that the misrepresentation had some influence on consumers."); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir.

Importantly, *Pizza Hut* and its progeny do not discriminate between false-advertising claims and false-designation-of-geographic-origin claims. Rather, *Pizza Hut* indicated that the doctrine of literal falsity applies to all claims arising under § 1125(a)(1)(B). *Pizza Hut*, 227 F.3d 489, 494-95 (5th Cir. 2000) (writing that all Section 43(a) Lanham Act claims are subject to the doctrine of literal falsity). And at least one other circuit has noted that the doctrine of literal falsity applies to false-designation-of-geographic-origin claims specifically. *See Pernod,* 653 F.3d at 249.

The complaint refers to a host of alleged false statements by Roussell that either implicate the "characteristics" or "geographic origin" of Dupart's Kaleidoscope products. For example, the complaint refers to the following statements by Roussell:

> "[Dupart] sells baking goods . . . she sells canola oil, cayenne pepper, milkshake, soymilk . . . I sell cosmetics . . . she sells Miracle Flops that go in pies and stuff."[60]

---

2002) (writing that "it appears that the Fifth Circuit blurred the boundary between" deception and materiality "in its recent *Pizza Hut* decision"); *see also* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:35 (5th ed. 2020) ("The Fifth Circuit has held that materiality can be presumed from a literally false advertising claim."). Nevertheless, the Fifth Circuit revisited this proposition of law two years after *Pizza Hut* was decided, and it did not clearly change course. *See IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368, 375 (5th Cir. 2002) ("If the statement at issue is shown to be literally false, the court must assume that it actually misled consumers . . . .").

[60]    R. Doc. 1 at 19 ¶ 19; YouTube, *Shakie in Rare Form Goes in on DARealBBJudy and Her Lawyer (Must See)*,

> "If anyone buys those Chinese . . . [unintelligible] . . . corona-scope products know that she utilizes your money to destroy kids."[61]

> "Stop holding these kids hostage to peddle this Chinese concoction that . . . brought corona over [to the United States]."[62]

> "They get it from Alibaba.com, directly from China.  This is where [plaintiff] get[s] [her] products from. . . corona 101, you get it from China."[63]

> "none of my stuff is coming from China bringing corona over here like somebody else's products . . . . I ain't gonna say no names . . . . Kaleidoscope."[64]

Each of these alleged statements are plausibly  "explicit representation[s] of fact."  *Eli Lily*, 893 F.3d at 382.

---

https://www.youtube.com/watch?v=pv28eZl_O6M (last visited October 1, 2020).

[61]    R. Doc. 1 at 13 ¶ 19; YouTube*, MC Shakie Tells what Happened to Shay (DARealBbJudy                    former                    assistant)*, https://www.youtube.com/watch?v=5vSuY2JPBcY  (last visited October 1, 2020).

[62]    R. Doc. 1 at 7 ¶ 19; YouTube*, The Miracle FLOP! How DaRealBBJudy Keep on Lying*,  https://www.youtube.com/watch?v=0azNVVSlGZ0 (last visited October 1, 2020).

[63]    R. Doc. 1 at 7 ¶ 19; YouTube*, The Miracle FLOP! How DaRealBBJudy Keep on Lying*,  https://www.youtube.com/watch?v=0azNVVSlGZ0 (last visited October 1, 2020).

[64]    R. Doc. 1 at 7 ¶ 19; YouTube, *Kaleido Concentration Camp? Shakie Takes            Us            Inside            DaRealBBJudy*, https://www.youtube.com/watch?v=wa_9hEZg-30 (last visited October 1, 2020).

As a consequence, Dupart plausibly alleges that Roussell's statements are "literally false." *Pizza Hut*, 277 F.3d at 497. Given that Dupart plausibly alleges that Roussell's statements are literally false, the Court assumes, under the doctrine of literal falsity, that Dupart likewise adequately alleges that Roussell's statements (2) deceived consumers and (3) were material to consumer decisions. *Pizza Hut*, 277 F.3d at 497.

### ii.   *Interstate Commerce and Injury*

As to the remaining factors, Dupart adequately alleges that her products are in interstate commerce.[65] Specifically, Dupart contends that she sells her Kaleidoscope products throughout the United States and on the internet.[66] *See United States v. Barlow*, 568 F.3d 215, 220 (5th Cir. 2009) ("[I]t is beyond debate that the Internet and email are facilities or means of interstate commerce."). In addition, Dupart adequately alleges that Roussell's statements are in interstate commerce, contending that Roussell disseminates those statements through the internet.[67] *Id.*

Finally, Dupart plausibly alleges that she is injured by the statements at issue, alleging "reduced market share, loss of income, difficulty in

---

[65]   R. Doc. 1 at 27 ¶¶ 62-64.

[66]   *See id.* at 62.

[67]   *See id.* at 6-19, ¶ 19.

establishing advertiser relationships"[68]   as well as "loss of income from sales,"[69] and damage to her "business reputation."[70]   Accordingly, the Court finds that Dupart states a claim for false advertising and false designation of geographic origin under the Lanham Act.

## IV.   CONCLUSION

For the foregoing reasons, the Court DISMISSES plaintiffs Harris's and Dupart's trademark-infringement claims under 15 U.S.C. § 1125(a)(1)(A), and dismisses plaintiff Harris's false-advertising and false-designation-of-geographic-origin claims under 15 U.S.C. § 1125(a)(1)(B). The Court finds that plaintiff Dupart has stated a claim for false-advertising and false-designation-of-geographic origin under 15 U.S.C. § 1125(a)(1)(B). Plaintiffs' motions to strike,[71] expedite consideration,[72] and extend time to respond[73] to Roussell's memorandum are MOOT.

---

[68]     *See id.* at 25 ¶ 45.
[69]     *See id.* at 31 ¶ 83.
[70]     *See id.*
[71]     R. Doc. 33.
[72]     R. Doc. 34.
[73]     R. Doc. 35.

New Orleans, Louisiana, this __28th__ day of October, 2020.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE